IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JIM'S CAR WASH, FREDDY DAVENPORT, DALE DAVENPORT, Plaintiffs, | § § § § | |
| v. | § § | CIVIL ACTION NO. 3:21-CV-01746 |
| THE CITY OF DALLAS, Defendant. | § § § | |

**CITY OF DALLAS'S BRIEF IN SUPPORT
OF ITS MOTION TO DISMISS FOR
FAILURE TO STATE A CLAIM**

CHRISTOPHER J. CASO
City Attorney

Kathleen M. Fones
Texas Bar No. 24050611
kathleen.fones@dallascityhall.com
Assistant City Attorney

Dallas City Attorney's Office
1500 Marilla Street, Room 7DN
Dallas, Texas 75201
214-670-3519 / fax 214-670-0622

Attorney for City of Dallas

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

CITY OF DALLAS'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE
TO STATE A CLAIM ..................................................................................................... 1

I.      OVERVIEW ........................................................................................................ 1

II.     FACTUAL BACKGROUND ............................................................................... 2

III.    ARGUMENT AND AUTHORITIES ................................................................... 3

        A.      Legal Standard for Motion to Dismiss under Rule 12(b)(6) ................... 3

        B.      Plaintiffs' Claims Are Time-Barred ....................................................... 5

                1.      Plaintiffs' pleadings establish that all events occurred more than two years
                        ago ............................................................................................. 5

                2.      Plaintiffs' Complaint is cut and pasted from their pleadings filed in state
                        court more than two years ago. ................................................... 6

        C.      Plaintiffs Have Failed to Properly Plead a Section 1983 Claim. ............ 6

        D.      Plaintiffs Have Failed to State a Due Process Claim. .......................... 10

        E.      Plaintiffs Have Failed to State an Equal Protection Claim. .................. 14

        F.      Plaintiffs Have Failed to State a Takings Claim. ................................. 18

        G.      Plaintiffs Have Failed to State a Claim for Conspiracy Under Section 1985. ...... 20

IV.     CONCLUSION ................................................................................................. 21

CERTIFICATE OF SERVICE ...................................................................................... 22

# TABLE OF AUTHORITIES

## Cases

*Albright v. Oliver,*
   510 U.S. 266 (1994) .................................................................................... 10

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ...................................................................................... 4

*Bailey v. Dallas County,*
   No. 3:09-CV-0865-K, 2014 WL 12744986
   (N.D. Tex. Jan. 27, 2014) ............................................................................. 5

*Bd. of County Comm'rs of Bryan Cnty. v. Brown,*
   520 U.S. 397 (1997) ...................................................................................... 7

*Bd. of Regents of State Colleges v. Roth,*
   408 U.S. 564 (1972) .................................................................................... 18

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ...................................................................................... 4

*Carmona v. City of Dallas,*
   No. 3:19-CV-469-L, 2020 WL 2812859
   (N.D. Tex. May 28, 2020) ............................................................................ 8

*Cinel v. Connick,*
   15 F.3d 1338 (5th Cir. 1994) ........................................................................ 1

*City of University Park v. Benners,*
   485 S.W.2d 773 (Tex. 1972) ........................................................... 11, 12, 18

*Collins v. Morgan Stanley Dean Witter,*
   224 F.3d 496 (5th Cir. 2000) ........................................................................ 4

*Cox v. City of Dallas,*
   430 F.3d 734 (5th Cir. 2005) ........................................................................ 7

*Dennis Melancon, Inc. v. City of New Orleans,*
   703 F.3d 262 (5th Cir. 2012) ...................................................................... 11

*Dobbins v. City of Dallas,*
   No. 3:20-CV-1727-K, 2021 WL 3781927
   (N.D. Tex. Aug. 25, 2021) ............................................................................ 8

*Dorsey v. Portfolio Equities, Inc.,*
   540 F.3d 333 (5th Cir. 2008) ........................................................................ 4

*Duarte v. City of Lewisville,*
     858 F.3d 348 (5th Cir. 2017) ............................................................... 15

*Engquist v. Oregon Dep't of Agr.,*
     553 U.S. 591 (2008) ........................................................................... 14

*Fontenot v. Texas,*
     No. 93-8567, 1994 WL 733504 (5th Cir. Dec. 28, 1994) ..................... 21

*Fuentes v. Shevin,*
     407 U.S. 67 (1972) ............................................................................. 13

*Funk v. Stryker Corp.,*
     631 F.3d 777 (5th Cir. 2011) ................................................................ 1

*Graham v. Connor,*
     490 U.S. 386 (1989) ........................................................................... 10

*Griffin v. Breckenridge,*
     403 U.S. 88 (1971) ............................................................................. 20

*Groden v. City of Dallas,*
     826 F.3d 280 (5th Cir. 2016) ................................................................ 8

*Heller v. Doe,*
     509 U.S. 312 (1993) ........................................................................... 15

*Helton v. Clements,*
     832 F.2d 332 (5th Cir. 1987) ................................................................ 5

*Jim Sowell Constr. Co. v. City of Coppell,*
     82 F. Supp. 2d 616 (N.D. Tex. 1998) ................................................... 11

*Jones v. Alcoa, Inc.,*
     339 F.3d 359 (5th Cir. 2003) ................................................................ 5

*Klumb v. Houston Mun. Emp. Pension Sys.,*
     458 S.W.3d 1 (Tex. 2015) ................................................................... 11

*Lynch v. Cannatella,*
     810 F.2d 1363 (5th Cir.1987) .............................................................. 20

*Matthias v. Bingley,*
     906 F.2d 1047, *modified on other grounds,*
     915 F.3d 946 (5th Cir. 1990) .............................................................. 13

*Mbogo v. City of Dallas*,
   No. 05-17-00879-CV, 2018 WL 3198398
   (Tex. App.—Dallas June 29, 2018, pet. denied) ...................................................... 11

*Meza v. Livingston*,
   607 F.3d 392 (5th Cir. 2010) ........................................................................................ 13

*Monell v. Dep't of Soc. Servs.*,
   436 U.S. 658 (1978) .......................................................................................................... 7

*Palazzolo v. Rhode Island*,
   533 U.S. 606 (2001) ........................................................................................................ 19

*Penn Cent. Transp. Co. v. City of New York*,
   438 U.S. 104 (1978) ........................................................................................................ 19

*Penn. Coal Co. v. Mahon*,
   260 U.S. 393 (1922) ........................................................................................................ 19

*Perez v. Physician Assistant Board*,
   765 F. App'x 960 (5th Cir. 2019) .................................................................................... 5

*Personnel Adm'r of Mass. v. Feeney*,
   442 U.S. 256 (1979) ................................................................................................. 15, 16

*Peterson v. City of Fort Worth*,
   588 F.3d 838 (5th Cir. 2009) ........................................................................................... 9

*Phillips v. Wash. Legal Found.*,
   524 U.S. 156 (1998) ........................................................................................................ 18

*Piotrowski v. City of Houston*,
   237 F.3d 567 (5th Cir. 2001) ........................................................................................... 7

*Randall D. Wolcott, M.D., P.A. v. Sebelius*,
   635 F.3d 757 (5th Cir. 2011) ........................................................................................... 4

*Richard v. Hinson*,
   70 F.3d 415 (5th Cir. 1995) ........................................................................................... 15

*Romer v. Evans*,
   517 U.S. 620 (1996) ........................................................................................................ 15

*Shelton v. City of College Station*,
   780 F.2d 475 (5th Cir. 1986) .................................................................................. 11, 12

*Sosa v. City of Corpus Christi*,
   739 S.W.2d 397 (Tex. App.—Corpus Christi 1987, no writ) .............................. 8, 16

*Spiller v. City of Texas City Police Dep't*,
130 F.3d 162 (5th Cir. 1997)................................................................................ 8

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*,
535 U.S. 302 (2002) ................................................................................ 18, 19

*United Bd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*,
463 U.S. 825 (1983) ................................................................................ 20

*United States v. Crew*,
916 F.2d 980 (5th Cir. 1990)................................................................................ 16

*Valle v. City of Houston*,
613 F.3d 536 (5th Cir. 2010)................................................................................ 7

*Vill. of Willowbrook v. Olech*,
528 U.S. 562 (2000) ................................................................................ 14

*Webster v. City of Houston*,
735 F.2d 838 (5th Cir. 1984) (en banc) .............................................................. 8, 9

*Wright v. Denison Indep. Sch. Dist.*,
No. 4:16-CV-615, 2017 WL 2262778
(E.D. Tex. May 24, 2017) ................................................................................ 8

*Zarnow v. City of Wichita Falls*,
614 F.3d 161 (5th Cir. 2010)................................................................................ 7, 8, 9

**Statutes**

42 U.S.C. § 1985................................................................................ 20

**Charter Provisions and Ordinances**

Dallas, Tex., Code § 51A-2.102 ................................................................................ 2

Dallas, Tex., Code § 51A-4.704 ................................................................ 2, 12, 13, 14, 18, 20

**Rules**

Fed. R. Evid. 201(b)................................................................................ 1

## CITY OF DALLAS'S BRIEF IN SUPPORT OF ITS
## MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendant City of Dallas (the "City") files this motion to dismiss Plaintiffs' Second Amended Complaint (ECF No. 36) ("Complaint") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  In support, the City would show the Court as follows:

### I.      OVERVIEW

Plaintiffs Jim's Car Wash, Freddy Davenport, and Dale Davenport bring a disjointed, mishmash of allegations against the City based on some sort of vague grievance based on events that occurred years ago and that were already addressed in prior state court litigation.  Indeed, the complaint is a near identical word for word, cut and paste combination of excerpts from pleadings filed in state court litigation more than two years ago.  Plaintiffs' claims were either dismissed with prejudice or abandoned in the state court, and there are no new allegations in the complaint filed here.  (*See* City App'x at 6-127.)[1]

Plaintiffs' pleadings establish that the claims are time barred.  As noted, all the claims were previously alleged in state proceedings more than two years ago and are time-barred.  Furthermore, Plaintiffs assert conclusory claims of equal protection, due process, takings, and conspiracy.  (ECF No. 36 at 14-16.)  Plaintiffs apparently seek injunctive relief and damages.  (*Id*. at 17-20.)  Apart from the limitations bar, no possible claim is stated against the City.  The Court should, therefore, dismiss the Complaint for failure to state a claim under Rule 12(b)(6).

---

[1] Matters of public record, such as state court filings and records of City Council and City board actions, are appropriately considered in a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *See, e.g., Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994); *see also* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").  For the Court's convenience, the City has provided copies of excerpts from the public record of Plaintiffs' prior lawsuit in its Appendix in Support of its Motions to Dismiss.

## II.    FACTUAL BACKGROUND

Jim's Car Wash was a self-service car wash owned and/or operated by the Davenports. (ECF No. 36 at 3.)  The Property is located within Planned Development District 595 ("PD 595"). (*Id.* at 7.)  In 2012, the City amended PD 595, and the amendments provided that the operation of a car wash was no longer a permissible use within PD 595.  (*Id.* at 9-10.)  As a result, Plaintiffs' use of the Property as a car wash became a nonconforming use.  *See* Dallas, Tex., Code § 51A-2.102(90).  In October 2018, the City initiated compliance proceedings on the Property.  (ECF No. 36 at 10-11.)  The purpose of the proceedings was to determine whether the continued operation of Jim's Car Wash at the Property would have an adverse effect on nearby properties and, if so, to establish a date by which the nonconforming use of the Property must cease.  *See generally* Dallas, Tex., Code § 51A-4.704(a)(1).  The City's Board of Adjustment ("BOA") held a hearing and granted the request to establish a compliance date for the Property on March 20, 2019, and at a second hearing on June 19, 2019, the BOA set a compliance date of July 19, 2019 and voided the certificate of occupancy for the car wash effective July 19, 2019.  (City App'x at 5.)

On April 1, 2019, Plaintiffs sued the City, the BOA, and former Mayor Rawlings, seeking to appeal the BOA's decision to establish a compliance date for the Property.  (*Id.* at 31-50.)  On July 5, 2019, Plaintiffs filed an amended petition.  (*Id.* at 52-89.)  In addition to the appeal of the BOA's decision, Plaintiffs' amended petition added claims for violations of the equal treatment, due course of law, and takings clauses of the Texas Constitution, violation of the prohibition on retroactive legislation in the Texas Constitution, violation of chapter 245 of the Texas Local Government Code relating to vested rights in permits, and violations of the First Amendment right to assemble, the Fourteenth Amendment equal protection and due process clauses, and the Fifth Amendment takings clause of the U.S. Constitution.  (*Id.* at 78-82.)  The amended petition also

added members of the Dallas City Council as defendants, but Plaintiffs did not serve most of the City Council members until more than a year later.  (*See id.* at 53-54, 22-25, 111.)

On June 5, 2019, the City filed suit against the Davenports, as well as the property *in rem*, in state court under a Texas statute relating to common and public nuisances.  (ECF No. 36 at 12.) On June 24, 2019, the state court issued a temporary injunction requiring Plaintiffs to implement reasonable measures to abate habitual criminal activity on the Property.  (ECF No. 36-1 at 64-67.) The injunction did not require the car wash to close.  (*Id.*)

In response to Plaintiffs' lawsuit, the City and other defendants filed a plea to the jurisdiction and a no-evidence motion for summary judgment.  (City App'x at 16-18, 110, 114.) At the hearing on the City's plea to the jurisdiction, counsel for Plaintiffs represented that Plaintiffs were non-suiting all federal constitutional claims.  (*Id.* at 110.)  On May 29, 2020, the state court dismissed with prejudice Plaintiffs' state constitutional claims.  (*Id.* at 110-12.)  On June 30, 2020, the state court dismissed with prejudice the appeal of the BOA decision and the remaining state law claim.  (*Id.* at 114-16.)

On July 27, 2020, Plaintiffs and the City, the BOA, and named council members entered into a settlement agreement.  (*Id.* at 118-20.)  Under the agreement, the City dismissed its claims against Plaintiffs, and Plaintiffs dismissed their lawsuit against the City defendants as well as their appeal relating to the state court's injunction orders, and Plaintiffs agreed to forgo any appeal of claims already dismissed by the state district court.  (*Id.*)  One year later, Plaintiffs filed this action in federal court.  (ECF No. 1.)

### III.    ARGUMENT AND AUTHORITIES

### A.    Legal Standard for Motion to Dismiss under Rule 12(b)(6)

Rule 12(b)(6) provides for the dismissal of a plaintiff's complaint when it fails "to state a claim upon which relief can be granted."  In evaluating a motion to dismiss under Rule 12(b)(6),

courts are to accept well-pleaded facts as true.  *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  "Conclusory statements or legal conclusions couched as a factual allegation are not accepted as true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plaintiffs must plead facts with enough specificity "to raise a right to relief above the speculative level" so as to "nudge[] their claims across the line from conceivable to plausible."  *Id.*  In short, a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 555).  Further, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679.  "[A] court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted)). A district court may also consider documents referenced in a complaint that are central to a plaintiff's claim even if the documents are not attached to the complaint.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000); *see also Twombly*, 550 U.S. at 568 n.13 (noting that the complaint quoted "only part of what [Qwest's CEO] reportedly said . . . and the District Court was entitled to take notice of the full contents of the published articles referenced in the complaint, from which the truncated quotations were drawn").

**B.      Plaintiffs' Claims Are Time-Barred.**

A claim may be dismissed under Rule 12(b)(6) if it is evident from the plaintiff's pleading that the claim is time barred and the pleading fails to raise some basis for tolling.  *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).   In Texas, the statute of limitations for a claim under section 1983 is two years.  *Perez v. Physician Assistant Board*, 765 F. App'x 960, 963 (5th Cir. 2019); *Bailey v. Dallas County*, No. 3:09-CV-0865-K, 2014 WL 12744986, at *1 (N.D. Tex. Jan. 27, 2014).  The same statute of limitations applies to claims under section 1985.  *See, e.g.*, *Helton v. Clements*, 832 F.2d 332, 334 (5th Cir. 1987).  Limitations accrues when the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.  *Perez*, 765 F. App'x at 963.

**1.      Plaintiffs' pleadings establish that all events occurred more than two years ago.**

Plaintiffs filed this litigation on July 27, 2021.  (ECF No. 1.)  In their Complaint, Plaintiffs allege that for years Defendants targeted their business for extinction and "successfully us[ed] retroactive over-regulation designed to put it out of business."  (ECF No. 36 at 1.)  Plaintiffs then assert a mix of alleged events purportedly occurring between 2001 and 2018.  (*Id.* at 3-11.)  Plaintiffs allege that, in 2018, the Dallas City Council adopted a resolution requesting that the BOA authorize compliance proceedings related to the nonconforming use of Plaintiffs' business. (*Id.* at 10-11.)  Plaintiffs then allege that the City filed suit against them on June 5, 2019, following a murder at the car wash on June 2, 2019.  (*Id.* at 12.)[2]  A temporary restraining order was issued on June 6, 2019.  (ECF No. 36-1 at 69-71.)  A hearing was held on the City's application for a temporary injunction, and it was granted on June 24, 2019.  (*Id.* at 64–67.)  Dale Davenport claims

---

[2] Plaintiffs fail to note that they had previously filed suit against the City and others on April 1, 2019.  (*See* City App'x at 7.)

that the preliminary injunctions in effect closed Jim's Car Wash.  (*Id.* at 8.)  All those events occurred more than two years prior to the filing of this lawsuit.[3]

> ### 2. Plaintiffs' Complaint is cut and pasted from their pleadings filed in state court more than two years ago.

Additionally, Plaintiffs' allegations and causes of action in this lawsuit are essentially identical to the allegations and causes of action alleged in the amended petition in the state court case that Plaintiffs filed more than two years prior to filing of this lawsuit.  (*Compare* City App'x at 52-89, *with* ECF No. 36; *see also* City App'x at 31-50 (original petition with many identical allegations).)  In fact, Plaintiffs originally brought their claims for violation of the Fourteenth Amendment rights to equal protection and due process and their Fifth Amendment takings claim on July 5, 2019 in the state court proceedings.  (City App'x at 81-82.)  There is very little difference, and the filings in state court preclude any possible claim of lack of knowledge or other basis for any type of tolling of the statute of limitations.  Further, the fact that the pleadings are essentially identical precludes any assertion that Plaintiffs required additional information or investigation to pursue their federal constitutional claims.  Based on Plaintiffs' pleadings and the matters for which the Court may take judicial notice, all claims by Plaintiffs are time barred.

## C. Plaintiffs Have Failed to Properly Plead a Section 1983 Claim.

Plaintiffs have failed to allege any of the necessary elements to satisfy the elements to bring a claim under 42 U.S.C. § 1983 against a municipality.  A municipality does not incur liability under section 1983 for an injury caused solely by its employees, and therefore, it cannot be held liable based on a theory of *respondeat superior*.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694

---

[3] Although Plaintiffs omit any discussion of the BOA proceedings from their Complaint, all events relating to the BOA proceedings, including the July 19, 2019 date that it established for the car wash use to terminate occurred more than two years prior to the filing of this lawsuit.  (*See* City App'x at 4-5.)

(1978); *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010). The bar on vicarious liability means that a municipality can only be liable when it causes the constitutional violation. *Monell*, 436 U.S. at 690-91. Accordingly, municipal liability under section 1983 results only if a deprivation of constitutional or federally protected rights was caused by the execution of the municipality's official policy or custom. *Id.* at 694; *Valle*, 613 F.3d at 541 (stating a plaintiff must show the deprivation of a federally protected right caused by an action taken pursuant to an official municipal policy to establish municipal liability under section 1983); *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) (the unconstitutional conduct about which the plaintiff complains must be directly attributable to the municipality through some sort of "official action or imprimatur"). To avoid *respondeat superior* liability and to impose liability on the municipality, the plaintiff must establish both the causal link (that the policy is the "moving force" behind the constitutional violation) and the municipality's degree of culpability ("deliberate indifference" to the known or obvious consequences of the municipality's unconstitutional policy). *Bd. of County Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 415 (1997).

To establish municipal liability, a plaintiff must show: (1) a policymaker; (2) an official policy; and (3) a violation of a constitutional right whose "moving force" is the policy or custom. *Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005); *Piotrowski*, 237 F.3d at 578. Proof of all three attribution principles is necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself, and to avoid municipal liability claims collapsing into *respondeat superior* liability. *Piotrowski*, 237 F.3d at 578; *Bryan County*, 520 U.S. 397 at 415; *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 167 (5th Cir. 2010). The description of a policy or custom and its relationship to the underlying constitutional violation cannot be conclusory; it must contain specific facts. *Spiller v.*

*City of Texas City Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997); *see also Carmona v. City of Dallas*, No. 3:19-CV-469-L, 2020 WL 2812859, at *5 (N.D. Tex. May 28, 2020) (dismissing section 1983 claim because the plaintiff's "allegations are conclusory and speculative with respect to whether a policy or custom of the City was the moving force that caused him to suffer a constitutional injury."); *Wright v. Denison Indep. Sch. Dist.*, No. 4:16-CV-615, 2017 WL 2262778, at *4 (E.D. Tex. May 24, 2017) ("[G]eneric assertions of municipal liability will not suffice.").

For the purposes of section 1983, a policymaker is one who takes the place of the governing body in a designated area of city administration. *Zarnow*, 614 F.3d at 166 (citing *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)). While the operative pleading need not supply an answer to the legal question of the specific identity of the city's policymaker, Plaintiffs still must plead *some* facts establishing that the alleged policy was promulgated or ratified by the City's final policymaker. *Groden v. City of Dallas*, 826 F.3d 280, 282 (5th Cir. 2016).

Notwithstanding Plaintiffs' failure to plead a policymaker, under Texas law, the final policymaker for the City is the Dallas City Council. *See id.* at 286. Furthermore, under Texas law, the Dallas City Council acts as a whole. *See, e.g.*, *Sosa v. City of Corpus Christi*, 739 S.W.2d 397, 404 (Tex. App.—Corpus Christi 1987, no writ). The alleged actions or statements of individual council members are not actions of the City's policymaker attributable to the City. *Id.* Although it is possible to allege that another official acted as a policymaker for the City, that requires that a plaintiff plead more than conclusory allegations to establish that the City Council delegated its policymaking authority. *See, e.g.*, *Dobbins v. City of Dallas*, No. 3:20-CV-1727-K, 2021 WL 3781927, at *3 (N.D. Tex. Aug. 25, 2021) (plaintiffs must allege factual allegations to show that the Dallas City Council delegated "policymaking—not decisionmaking—authority").

As to the policy element, a plaintiff can establish an "official policy" in a couple of ways. First, a plaintiff may point to a policy statement, ordinance, regulation, or decision that has been officially adopted and promulgated by the municipality's policymaker or by an official to whom the policymaker has delegated policymaking authority. *Webster*, 735 F.2d at 841. Alternatively, a plaintiff may show an official policy by demonstrating a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. *Id.*; *Zarnow*, 614 F.3d at 168-69; *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).

To show that the City acted unconstitutionally, therefore, Plaintiffs must plead nonconclusory facts which show, or facts from which the Court can reasonably infer, that the Dallas City Council promulgated an unconstitutional policy or ratified a persistent, widespread practice of city employees engaging in the alleged unlawful conduct about which Plaintiffs complain. Plaintiffs have not met that burden here. Most of Plaintiffs' allegations have no relation to actions of the Dallas City Council, and Plaintiffs have not alleged any facts to tie those allegations to a policy promulgated or ratified by the Dallas City Council. The only allegations that constitute a policy promulgated by the Dallas City Council are that nine years ago, in 2012, the Dallas City Council amended PD 595. (ECF No. 36 at 9.) Among the extensive amendments to PD 595 considered at that meeting, the Dallas City Council removed car washes as an allowed use in the commercial subdistrict where Jim's Car Wash was located. (*Id.*; *see also* City App'x at 134-75 (reflecting the full extent of the amendments to the PD).) Six years later, in 2018, the Dallas City Council considered whether to request that the BOA authorize compliance proceedings to consider whether to terminate the nonconforming car wash use at 2702 Martin Luther King, Jr.

Boulevard.  (ECF No. 36 at 10-11.)  As discussed in more detail below, however, Plaintiffs have

not met the third element of *Monell* as to these Dallas City Council actions because they have not

alleged any facts to tie these actions to an alleged intent to discriminate against Plaintiffs based on

race or otherwise to show that these actions were the moving force leading to a constitutional

violation.  Therefore, Plaintiffs' Complaint should be dismissed for failure to adequately plead

municipal liability under section 1983.

**D.      Plaintiffs Have Failed to State a Due Process Claim.**

In section V of their Complaint, Plaintiffs allege a violation of due process under section

1983.  (ECF No. 36 at 14-15.)  Although it is not specifically stated, it appears that Plaintiffs' claim

is intended to invoke the substantive rather than procedural due process protections under the

Fourteenth Amendment.  (*See id.*)  Substantive due process claims, however, are limited to those

where there is no specific protection in the Bill of Rights.  *Albright v. Oliver*, 510 U.S. 266, 273

(1994).  "Where a particular Amendment 'provides an explicit textual source of constitutional

protection' against a particular sort of government behavior, 'that Amendment, not the more

generalized notion of "substantive due process," must be the guide for analyzing these claims.'"

*Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

Here, Plaintiffs' due process claim is essentially that the City deprived Plaintiffs of a

protected property interest on account of their race or because of their "refusal to cooperate in

schemes to make unlawful payments to elected officials."  (ECF No. 36 at 14.)  The assertion that

the City has discriminated against Plaintiffs based on race is covered by Plaintiffs' more specific

equal protection claim, which is discussed in section III.E below.  As to Plaintiffs' assertion that

the City has singled out Plaintiffs because of an alleged refusal to pay bribes, Plaintiffs make no

allegations to establish any link between the City and an alleged bribery scheme and certainly do

not plausibly allege that the City has any official policy to support bribery or corruption.  (*See*

*generally* ECF No. 36.)  Therefore, they have not pled the necessary elements to allege municipal liability related to the purported bribery scheme.

In addition, Plaintiffs have not adequately pled a protected property interest.  *See Shelton v. City of College Station*, 780 F.2d 475, 479 (5th Cir. 1986) ("Deprivation by the state of a protected interest in life, liberty, or property is prerequisite to a claim for denial of due process."). Plaintiffs allege that they have a protected property interest in the car wash (ECF No. 36 at 14), but their allegation ignores the law as to what constitutes a protected property interest.  What constitutes a protected property interest is defined by state law.  *See Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 269 (5th Cir. 2012).  The Texas Supreme Court has held that "[a] constitutionally protected right must be a vested right, which is 'something more than a mere expectancy based upon an anticipated continuance of an existing law.'"  *Klumb v. Houston Mun. Emp. Pension Sys.*, 458 S.W.3d 1, 15 (Tex. 2015).  Texas law, however, does not recognize any "constitutionally protected vested right in property uses once commenced or in zoning classifications once made."  *City of University Park v. Benners*, 485 S.W.2d 773, 778 (Tex. 1972), *abrogated on other grounds by Bd. of Adjustment of City of San Antonio v. Wende*, 92 S.W.3d 424 (Tex. 2002); *see also Jim Sowell Constr. Co. v. City of Coppell*, 82 F. Supp. 2d 616, 618 (N.D. Tex. 1998) (quoting *Benners*); *Mbogo v. City of Dallas*, No. 05-17-00879-CV, 2018 WL 3198398, at *8-9 (Tex. App.—Dallas June 29, 2018, pet. denied).  Because Plaintiffs have no vested right in any particular property use under Texas law, they have not pled a protected property interest as necessary to state a claim for violation of due process.

Furthermore, Plaintiffs have not met their burden to allege that a municipal zoning decision violates due process.  As discussed above and in section III.E below, Plaintiffs have not sufficiently pled "invidious discrimination, suspect classifying criteria, or infringement of fundamental

interests," and therefore, federal court review of the decisions is limited "to whether the decisions were 'arbitrary and capricious.'" *Shelton*, 780 F.2d at 477. "[F]ederal judicial interference with a state zoning board's quasi-legislative decisions . . . is proper only if the governmental body could have had no legitimate reason for its decision." *Id.* at 483. As the Texas Supreme Court held in *Benners*, "[t]here are strong policy arguments and a demonstrable public need for the fair and reasonable termination of nonconforming property uses." 485 S.W.2d at 778. This comports with the stated purpose of the Dallas City Code section relating to nonconforming uses – "that nonconforming uses be eliminated and be required to comply with the regulations of the Dallas Development Code, having due regard for the property rights of the persons affected, the public welfare, and the character of the surrounding area." Dallas, Tex., Code § 51A-4.704(a). In conformity with this purpose, the City's process for amortization of nonconforming uses ensures that a nonconforming use is allowed to continue for at least as long as is necessary to recoup the investment in the use. *Id.* § 51A-4.704(a)(1)(D). The City's policy relating to terminating nonconforming uses is to balance the City's interest in eliminating nonconforming uses and avoiding adverse effects on nearby properties of those nonconforming uses with ensuring that a property owner has the opportunity to amortize his or her actual investment in the use. *See generally* Dallas, Tex., Code § 51A-4.704. The actions of the City relating to the nonconforming car wash use are rationally related to a legitimate government interest to eliminate nonconforming uses within the framework established by the Dallas City Code, and Plaintiffs have not sufficiently pled that the City's zoning determinations were arbitrary or capricious as required to state a claim for violation of substantive due process.

To the extent that Plaintiffs intended to assert a procedural due process claim, they have also failed to state a claim. A procedural due process claim requires a plaintiff to establish a lack

of notice and an opportunity to be heard.  *Matthias v. Bingley*, 906 F.2d 1047, 1051-52, *modified on other grounds*, 915 F.3d 946 (5th Cir. 1990).  A plaintiff must establish that the government interfered with an existing protected liberty or property interest and that the procedures leading up to the deprivation of that interest were constitutionally deficient.  *See Meza v. Livingston*, 607 F.3d 392, 399 (5th Cir. 2010).  The procedural protections include, at a minimum, notice and an opportunity to be heard in a meaningful time and manner.  *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972).  As discussed above, Plaintiffs have not pled any interference with a protected liberty or property interest.  They also have not pled – and cannot plead – that the procedures leading up to the deprivation of any alleged interest were constitutionally deficient.  Plaintiffs allege that the car wash was "in effect" closed by the state court's temporary restraining order.  (ECF No. 36 at 12.) They do not, however, allege any basis for determining that the state court's procedures were constitutionally deficient other than asserting that they were only given one-hour's notice of the hearing.  (*Id.*)  Plaintiffs' filings, however, show that a second temporary injunction hearing was held more than two weeks later.  (ECF No. 36-1 at 60-71.)

Similarly, although Plaintiffs make no allegations about the BOA process for terminating the nonconforming car wash use, the City and BOA followed the procedures established under the Dallas City Code for terminating a nonconforming use.  *See* Dallas, Tex., Code § 51A-4.704.  The BOA held two hearings relating to the termination of the nonconforming car wash use.  (City App'x at 5.)  At both, Plaintiffs were afforded the opportunity to present evidence and argument. (*See, e.g.*, *id.* at 75, 82-84.)  They then had the right to appeal – and did appeal – the final decision of the BOA to state district court under section 211.011 of the Local Government Code.  (*Id.* at 82-84.)  Plaintiffs have not stated a claim for violation of their substantive or procedural due process rights, and their due process claim should be dismissed.

E.      **Plaintiffs Have Failed to State an Equal Protection Claim.**

In section VI of their Complaint, Plaintiffs allege a violation of the equal protection clause under section 1983.  (ECF No. 36 at 15-16.)  Plaintiffs assert that they are bringing an equal protection claim as a "class of one" and further allege that "Defendant's actions are part of an ongoing, intentional attempt to maintain a racially segregated commercial district" and that the City has "single[d] out Plaintiffs because of their race, their refusal to cooperate in various schemes to make unlawful payments to elected officials, and as retaliation for testifying against Defendant to the state legislature."  (*Id.*)

A "class of one" theory applies when a plaintiff does not allege discrimination based on membership in a suspect class, but instead alleges that he or she has been singled out for some other irrational reason.  *See Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 601 (2008).  In a "class of one" equal protection challenge, the alleged government action will be upheld if there is a "rational basis for the difference in treatment."  *Id.* at 602 (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).  The "class of one" theory, however, recognizes that "some forms of state action . . . by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments."  *Id.* at 603.  As an example, the *Engquist* court discussed the discretionary nature of speeding tickets, which are given to some but not others.  *Id.* at 603-04.  The City's process for terminating nonconforming uses is similar.  While the 2012 zoning change applied to all properties in PD 595, the process for terminating a nonconforming use is specifically designed to apply only to one property at a time because of the fact-specific nature of the inquiry as to each property.  *See* Dallas, Tex., Code § 51A-4.704.  Simply because the nonconforming use procedures are individualized, that does not mean that the use of those procedures against a particular property is a violation of equal protection.

Generally, an equal protection claim requires a plaintiff to plead that "two or more classifications of similarly situated persons were treated differently." *Duarte v. City of Lewisville*, 858 F.3d 348, 353 (5th Cir. 2017). The level of scrutiny applied to that alleged classification depends on whether the alleged classification "operates to the disadvantage of some suspect class or impinges upon a fundamental right explicitly or implicitly protected by the Constitution." *Id.* at 354 (quoting *Richard v. Hinson*, 70 F.3d 415, 417 (5th Cir. 1995)). If so, strict scrutiny applies, but otherwise, "the classification need only bear a rational relation to a legitimate governmental purpose." *Id.* at 353-54. As the Supreme Court has stated, "[t]he Fourteenth Amendment's promise that no person shall be denied the equal protection of the laws must coexist with the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons." *Romer v. Evans*, 517 U.S. 620, 631 (1996); *see also Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 271-72 (1979) ("Most laws classify, and many affect certain groups unevenly, even though the law itself treats them no differently from all other members of the class described by the law. When the basic classification is rationally based, uneven effects upon particular groups within a class are ordinarily of no constitutional concern."). The Supreme Court has held that, "if a law neither burdens a fundamental right nor targets a suspect class, [it] will uphold the legislative classification so long as it bears a rational relation to some legitimate end." *Romer*, 517 U.S. at 631; *see also Heller v. Doe*, 509 U.S. 312, 319 (1993) ("[A] classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity.").

Alleging a suspect classification requires more than simply stating that a plaintiff has been singled out based on race. "It is well established that a showing of discriminatory intent or purpose is required to establish a valid equal protection claim." *United States v. Crew*, 916 F.2d 980, 984

(5th Cir. 1990).  To show discriminatory purpose, the decisionmaker must have "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Feeney*, 442 U.S. at 279.  Plaintiffs here have not met their burden to plead that the Dallas City Council as the policymaker for the City acted with discriminatory intent or purpose in enacting the 2012 zoning changes to PD 595 or requesting that the BOA authorize compliance proceedings for the nonconforming car wash use.  The only factual allegations in the Complaint to support Plaintiffs' claim that they have been mistreated or singled out based on their race are: (1) an assertion that, in 2013, a City employee named Lou Jones informed Davenport that the City would not sell a vacant property to "people like you" (ECF No. 36 at 7); and (2) an assertion that, in 2018, Carolyn Davis stated, "'We're going to get rid of that cracker head' while talking about plans for the car wash property" (*id.* at 11).  Neither of these statements reflect any official policy promulgated or ratified by the Dallas City Council as the policymaker for the City.  Although Davis was once a council member, Plaintiffs admit that she was not a council member at the time of the statement (*id.*), and they also acknowledge that she recused herself from the vote on the 2012 zoning amendments (*id.* at 9).  Furthermore, under Texas law, "[t]he individual knowledge, lack of knowledge, understanding, or thought process of any individual member of a governmental body such as a city council have no bearing upon the validity of the action taken by the body." *Sosa*, 739 S.W.2d at 404.  Therefore, even if that statement was sufficient to indicate a discriminatory motive for Davis and if she had sufficient involvement in any of the Dallas City Council actions at issue here despite not voting on either, that still would not be sufficient to show that the fifteen-member Dallas City Council as a whole acted with discriminatory intent or purpose.

Plaintiffs allege no statistics or other facts regarding treatment of white-owned vs. black-owned businesses either in PD 595 or elsewhere in the City.  Based on their assertion that they are a "class of one" with respect to discrimination based on race, Plaintiffs appear to imply that they are the only white business owners or property owners in the area, but again, Plaintiffs allege no facts to support this implication.  Plaintiffs' Complaint does not meet the pleading requirements for a claim for violation of equal protection based on race, and neither of the other motives that Plaintiffs allege as an irrational basis for the City's official actions are sufficient to plead a plausible claim for violation of equal treatment.

As discussed above, Plaintiffs' allegations about bribery do not sufficiently allege any official policy promulgated by the Dallas City Council to encourage bribery and corruption or to punish business owners that do not participate in an alleged bribery scheme.  Plaintiffs' assertion that any action of the City was intended as retaliation for testifying to the state legislature is similarly implausible and unsupported by any official policy of the City.  As discussed above, the only actions alleged in this litigation by the City's policymaker are the 2012 change in zoning to PD 595 and the 2018 request to the BOA to authorize compliance proceedings for the nonconforming car wash use (ECF No. 36 at 9-11), and the testimony to the state legislature occurred in 2005 (*id.* at 5).  Therefore, Plaintiffs' contention is essentially that, seven years after the testimony before the state legislature, the City made extensive changes to the zoning in PD 595 specifically to retaliate against Plaintiffs by eliminating the car wash use at 2702 Martin Luther King, Jr. Boulevard, but then, the City then waited another six years to begin the process to terminate the nonconforming car wash use at the property.  This contention does not meet the plausibility standards for pleading as a basis for the Dallas City Council's actions.

Rather, as discussed above, both state law and the Dallas City Code support and encourage "the fair and reasonable termination of nonconforming property uses." *Benners*, 485 S.W.2d at 778; *see* Dallas, Tex., Code § 51A-4.704(a).   The City's action in requesting that the BOA authorize compliance proceedings for the nonconforming car wash use bears a rational relation to the legitimate end of encouraging the termination of nonconforming property uses, and Plaintiffs have not sufficiently alleged a claim for violation of the equal protection clause.   Therefore, Plaintiffs' equal protection claim should be dismissed.

## F.    Plaintiffs Have Failed to State a Takings Claim.

In section VII of their Complaint, Plaintiffs allege a claim for illegal taking under section 1983.  (ECF No. 36 at 16.)  The claim states only that "Defendant's actions . . . violate Plaintiffs' right to be free of government takings as provided by the Fifth Amendment . . . ." (*Id.*)  The claim does not contain any allegations as to how the City's actions constitute a taking.  The first step to alleging a takings claim under the Fifth Amendment is to allege a property interest entitled to protection. *See Phillips v. Wash. Legal Found.*, 524 U.S. 156, 164 (1998).  As with the due process protections discussed above, [t]he existence of a property interest is determined by reference to 'existing rules or understandings that stem from an independent source such as state law.'" *Id.* (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577(1972)).  And as discussed above, Plaintiffs do not have any property interest in any particular use of a property, *Benners*, 485 S.W.2d at 778, and therefore, Plaintiffs do not allege any property interest entitled to protection under the Fifth Amendment takings clause.

Even if they had a property interest, however, a taking generally requires government confiscation or physical occupation, or in the case of a regulatory taking, a regulation so severe that it leaves no economically viable use of the property. *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 321-23 (2002).  It is also possible to allege a taking

through a detailed circumstantial analysis of a particular restriction to show that it is such a substantial restriction so as to constitute a taking. *See Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978). *Penn Central* identifies three factors of particular significance: (1) the economic impact on the claimant, (2) the extent of interference with the claimant's investment-backed expectations, and (3) the character of the government's action. *Id.* Nevertheless, "*Penn Central* does not supply mathematically precise variables, but instead provides important guideposts that lead to the ultimate determination whether just compensation is required." *Tahoe-Sierra Pres. Council*, 535 U.S. at 326-27 n.23 (citations omitted) (quoting *Palazzolo v. Rhode Island*, 533 U.S. 606, 634 (2001) (O'Connor, J., concurring)). *Penn Central* also acknowledges that "[g]overnment hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law . . . ." *Penn Cent.*, 438 U.S. at 124 (quoting *Penn. Coal Co. v. Mahon*, 260 U.S. 393, 413 (1922)). Specifically, *Penn Central* identifies zoning laws as a classic example and notes that some such laws "have been viewed as permissible governmental action even when prohibiting the most beneficial use of the property." *Id.* at 125.

Plaintiffs do not contend that the City has condemned or seized the property and do not plead any facts to establish that there is no other economically viable use for the property other than a car wash. Plaintiffs also do not plead any of the *Penn Central* factors in an attempt to plead that the City's restrictions have unreasonably interfered with their right to use or enjoy the property. At most, Plaintiffs allege that "[t]hey have invested time and money into their business, expecting to be able to receive a return on their investment. The City's actions have resulted in the deprivation of Plaintiffs' investment-backed interest in the property at issue." (ECF No. 36 at 14.) As discussed above, however, the City's process for terminating nonconforming uses requires

the BOA to determine a reasonable period for the owner's actual investment in a use before it became nonconforming can be amortized and to allow the nonconforming use to continue for that period. *See* Dallas, Tex., Code § 51A-4.704(a)(1)(D). Plaintiffs do not – and cannot – allege that this process was not followed or allege how the process was insufficient to ensure that their investment-backed interest in the use was addressed. Plaintiffs have not made the necessary showing to plead a takings claim, and therefore, the claim should be dismissed.

## G.     Plaintiffs Have Failed to State a Claim for Conspiracy Under Section 1985.

In section VIII of their Complaint, Plaintiffs allege that the City conspired with "the individuals described herein" to deprive them of their civil rights in violation of 42 U.S.C. § 1985. (ECF No. 36 at 16.) Plaintiffs have failed, however, to allege any elements necessary for a conspiracy claim. "[T]o make out a violation of § 1985(3) . . . , the plaintiff must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *United Bd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 828-29 (1983). "[T]he conspiracy not only must have as its purpose the deprivation of 'equal protection of the laws, or of equal privileges and immunities under the laws,' but also must be motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Id.* at 829 (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). "Plaintiffs who assert conspiracy claims under civil rights statutes must plead the operative facts upon which their claim is based. Bald allegations that a conspiracy existed are insufficient." *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir.1987) (footnote omitted). As discussed above, Plaintiffs have not sufficiently alleged any invidiously discriminatory animus by

the City or any injury to a vested property right. Furthermore, Plaintiffs do not allege any unlawful overt act in furtherance of the alleged conspiracy involving the City.

In addition, Plaintiffs' conspiracy claim fails under the intracorporate conspiracy theory doctrine. The Fifth Circuit has held that "a state agency and its officials represent a single entity; as a matter of law state officials of a single agency generally cannot conspire with their employer agency or with one another in the carrying out of their official duties as agency employees." *Fontenot v. Texas*, No. 93-8567, 1994 WL 733504, at *4 (5th Cir. Dec. 28, 1994). The only allegations tying any of the individuals described in the Complaint to the City is that they once were City Council members or contractors for the City. (*See* ECF No. 36 at 6-8, 11.) There is no allegation tying the Dallas City Council as the policymaker for the City to any alleged conspiracy. Ultimately, Plaintiffs have alleged bald allegations of a conspiracy but no specific facts to support the claim. Therefore, Plaintiffs' claim under section 1985 should be dismissed.

## IV.   CONCLUSION

For the foregoing reasons, the City respectfully requests that Plaintiffs' Second Amended Complaint be dismissed in its entirety and with prejudice for failure to state a claim and that the Court grant the City such other relief as the Court finds just.

Respectfully submitted,

OFFICE OF THE CITY ATTORNEY
CITY OF DALLAS, TEXAS

By:  *s/ Kathleen M. Fones*
Kathleen M. Fones
Texas Bar No. 24050611
Assistant City Attorney
kathleen.fones@dallascityhall.com

7BN Dallas City Hall
1500 Marilla Street
Dallas, Texas 75201
Telephone – 214/670-3519
Telecopier – 214/670-0622

**ATTORNEY FOR CITY OF DALLAS**

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was submitted to the Clerk of Court using the

CM/ECF System for such electronic filing on this 10th day of November, 2021.  Based on the

records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to all parties

registered under the CM/ECF System to receive service electronically.


By:  */s/ Kathleen M. Fones*